MICHAEL COSTA,                  :
         Plaintiff,          :
                              :
         v.                 :      C.A. No. 11-336L
                              :
STEPHEN RASCH, Alias, Individually  :
and in his Official Capacity as a Police  :
Officer for the City of Providence,    :
Rhode Island, et al.,           :
         Defendants.       :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

This motion for summary judgment turns on whether the Providence Police had probable cause to initiate the prosecution of Plaintiff Michael Costa, a popular nightclub disk jockey ("DJ"), after his arrest following the notorious[1] chaos that erupts with the closing of the bars in the City of Providence ("the City"). Plaintiff sued the City and three City police officers, Defendants Steffen Rasch,[2] Robert Papa, Margaret Schlateger (the "Officer Defendants"), under 42 U.S.C. § 1983 and state law theories to recover damages based on the use of excessive force resulting in serious injury during his arrest outside the Providence nightclub, Finnegan's Wake, in the early morning hours of March 22, 2010. While this civil lawsuit pressed forward, the criminal prosecution that followed Plaintiff's arrest proceeded on a parallel track. Initially, he

---

[1] The notoriety of the City's struggle with the chaos that erupts as crowds flood from its nightclubs and bars at closing time is well developed in the record of this case. <u>See, e.g.</u>, ECF No. 54-4 at 5 (police aware that area of Finnegan's Wake "very problematic in regards to situations like this"); ECF No. 54-5 at 11 (police need to patrol clubs as they close); ECF No. 54-9 at 8 (at all club closings, people from club try to disperse crowds); ECF No. 62-4 at 5 (event promoter always tries to get crowd to disperse quickly after club closing so nothing happens).

[2] Defendant Rasch's first name is Steffen, not Stephen as set forth in the Amended Complaint. ECF No. 62 at 1.

had a bench trial and was found guilty in the Rhode Island district court of disorderly conduct, resisting arrest and obstructing police officers. Next, he appealed to the Rhode Island superior court, where he was acquitted of the same charges in a *de novo* jury trial.[3] Based on the acquittal, Plaintiff amended his Complaint to add Count XIII, a state-law count for malicious prosecution[4] against the Officer Defendants.

All Defendants responded with a motion for partial summary judgment based on a single argument: they contend that Plaintiff's malicious prosecution claim fails as a matter of law because he has not proffered sufficient evidence to establish the essential element that the Officer Defendants lacked probable cause to initiate criminal proceedings. The Defendants posit that Plaintiff's conviction beyond a reasonable doubt after a bench trial in the Rhode Island district court conclusively establishes the existence of probable cause. Plaintiff disagrees, arguing that the conviction gives rise only to a rebuttable presumption and that there is record evidence from which a fact finder could infer that the guilty verdict was obtained by the perjury of the Officer Defendants, creating an issue of fact for trial.

Because I find that Plaintiff has failed to create a genuine issue of fact as to whether his conviction was obtained by the perjury of the Officer Defendants, I recommend that Defendants' motion be granted. ECF No. 50.

---

[3] Under Rhode Island law, a misdemeanor is initially tried to a judge in the district court; the appeal of the state district court conviction results in a *de novo* jury trial on the same issues in the superior court. R.I. Gen. Laws §§ 12-3-1, 12-22-1; see State v. McManus, 950 A.2d 1180, 1181 (R.I. 2008).

[4] Plaintiff relies only on the state law version of the tort; he has not alleged malicious prosecution under 42 U.S.C. § 1983, which is a distinct cause of action. See Meehan v. Town of Plymouth, 167 F.3d 85, 88-92 (1st Cir. 1999).

# I.  FACTS AND TRAVEL

### a.  Events outside Finnegan's Wake

While many of the facts framing this controversy are simple, clear and not materially disputed, most of the facts that fill in the details of what occurred in the early morning hours of March 22, 2010, are hotly controverted, with multiple versions of the events from nine witnesses, some of whom have testified as many as three times.[5]  What follows is built on the framework of the undisputed facts, with the parties' differing versions sketched in.  The pith of the tale is the undisputed fact that Plaintiff was arrested by the Officer Defendants in the aftermath of the closing of Finnegan's Wake, a downtown Providence nightclub.  SUF ¶¶ 1-2.  This context is important: club-closing time in downtown Providence is described in the record as a moment when fights are common.  ECF No. 63-5 at 1.  Finnegan's Wake has been a frequent destination for City police, who typically respond to disturbances there once or twice a week.[6]  ECF No. 54-4 at 14.

Plaintiff's story begins after midnight on March 22, 2010.  He was working at Finnegan's Wake as a DJ at a dance party open to under-age patrons promoted by his cousin, Madena Costa.  Approximately one hundred fifty to two hundred people packed the club.  SUF ¶¶ 1-2; ECF No. 54-9 at 6 ("it was packed in there"); ECF No. 56 at 8 ("maybe like 150 that night, I believe"); ECF No. 54-4 at 4 ("maybe 200 people in the streets" after closing).  The Providence Police had

---

[5] In connection with this motion, the parties submitted selected deposition transcripts, the entire district court trial record and selections from the superior court trial record; these submissions include testimony from some or all of the following: the three Officer Defendants; Plaintiff; Madena Costa, the event promoter and Plaintiff's cousin; another cousin of Plaintiff; Plaintiff's aunt; an acquaintance of Plaintiff; and a Providence parking enforcement officer who was also a fan of Plaintiff's DJ events.  In addition, the parties submitted a silent grainy surveillance video that shows some of the street and sidewalk areas outside of Finnegan's Wake; it was a trial exhibit in the superior court, but not the district court.  The entire record submitted by both parties was reviewed in connection with this report and recommendation.

[6] During Plaintiff's district court trial, this fact was found to be relevant as material background of which the Officer Defendants were aware as they responded to the call from Finnegan's Wake on March 22, 2010.  ECF No. 54-6 at 7.  During the superior court trial, Judge Clifton denied a motion to strike this testimony.  ECF No. 63-5 at 1.

already responded to Finnegan's Wake earlier in the evening.[7]  ECF No. 54-3 at 5.  The events

that culminated in Plaintiff's arrest began with a fight involving two girls inside the club shortly

before closing; the fight continued outside after one of the primary combatants was ejected.

SUF ¶¶ 4, 5; ECF No. 63-1 at 3-4.  One of the patrons involved in the fight was flailing her arms

and yelling; ultimately, she became so upset that she broke one of Finnegan's Wake's windows

with her bare hands.  SUF ¶ 5; ECF No. 54-9 at 7, 8.

At approximately the same time, Finnegan's Wake closed[8] for the evening and the crowd

poured into the street.  SUF ¶ 5; ECF No. 54-9 at 7, 8; ECF No. 62-5 at 5.  Madena Costa, the

promoter, and Plaintiff tried to persuade the crowd to disperse without success. [9]  The woman

who had broken the window continued to exchange words with another group of girls, and at

least one person had to be held back.  ECF No. 63-1 at 5-6; ECF No. 63-9 at 2.  Patrons lingered

to watch the action.  ECF No. 63-1 at 6-7.  The first of the three Officer Defendants arrived while

this disturbance was unfolding.  SUF ¶¶ 9, 10.  Based on her assessment of the seriousness of the

situation, she called for back-up; in all, five vehicles were "short posted," that is, instructed to

stay at Finnegan's Wake until the incident was resolved.  ECF No. 63-5 at 3.  At this point in the

unfolding events, the Officer Defendants had not yet had any contact with Plaintiff; as a result,

there is no suggestion that this call for back-up was a pretext.

---

[7] Some of Plaintiff's witnesses dispute whether the police response earlier in the evening was justified.  That is
beside the point.  What matters is that the Defendant Officers responding to Finnegan's Wake at closing time were
aware that there had already been a police response earlier in the evening.  ECF No. 54-4 at 4.

[8] Whether Finnegan's Wake closed early because the fight was serious or whether the fight coincided with regular
closing time is disputed by Plaintiff and one of his witnesses.  Compare ECF No. 62-5 at 5 (Plaintiff's testimony that
club closed at usual time), with ECF No. 54-9 at 7 (Plaintiff's cousin's testimony that "we ended up closing the club
down earlier that night" because of disturbance caused by woman who broke window).

[9] At least one of Plaintiff's witnesses confirmed the Officer testimony that, as a promoter, Madena Costa was
experienced in working cooperatively with the police to assist in dispersing crowds after events he promoted, while
Plaintiff lacked experience in dealing directly with the police.  SUF ¶ 7; ECF No. 63-4 at 2.

The parties dispute the number of fights or disturbances that were occurring as additional police arrived. Plaintiff and some of his relatives and friends claim the woman who broke the window caused the only disturbance, while the Officer Defendants claim they saw "maybe 200 people on the streets" and "numerous disturbances, fights in progress," a "chaotic situation." ECF No. 54-4 at 4, 14. One of Plaintiff's witnesses described the crowd as "kids out there . . . arguing, yelling and stuff like that," "people were fighting . . . a big commotion;" another testified that fighting was ongoing when the Officer Defendants arrived and that most people did not disperse. ECF No. 54-8 at 10; ECF No. 63-1 at 6, 7; ECF No. 64-1 at 6. Whatever else may have been going on, however, it is undisputed that the window-breaker was arrested and that Plaintiff, who had moved closer to watch the arrest, was standing only three to four feet away and did not think that the police handled her arrest properly. ECF No. 62-5 at 4. It is also undisputed that, by the time of her arrest, things were "getting a little out of hand" and people upset with the arrest were yelling "all types of things" at the police.[10] ECF No. 56 at 14. Finally, in the explosive atmosphere after the arrest of the window-breaker, it is undisputed that the Officer Defendants ordered Plaintiff to disperse at least twice and twice he aggressively refused; these refusals led to the events culminating in his arrest. The parties disagree over virtually every detail of the circumstances of these refusals to obey an order of the police. ECF No. 62-5 at 14.

In Plaintiff's version, he continued to try to disperse the crowd himself when he noticed an acquaintance filming the police with a mobile phone; Plaintiff urged him to stop because he thought the police would not like it. ECF No. 63-2 at 6-7. In the confusion, Plaintiff saw his acquaintance drop the device, which Plaintiff tried to pick up, but one of the Officers kicked it

---

[10] The Officer Defendants testified that Plaintiff was one of those yelling. Plaintiff denies it.

away and broke it.[11]  ECF No. 63-2 at 7.  Plaintiff claims he reprimanded the Officer, who

ordered him to get to his car.  ECF No. 63-2 at 8.  Plaintiff refused, saying that he was the DJ and

was helping with crowd control.  The Officer repeated the specific order that Plaintiff get in his

car.  ECF No. 63-2 at 8.  Plaintiff refused again – he later described his response to the officer: "I

own a business downtown, and I'm not going to let him talk to me any way that he would like

to."  ECF No. 56 at 15-16.  Instead, Plaintiff asked for the officer's badge number, repeated it out

loud, and told the officer he was going to report him in the morning.  ECF No. 63-2 at 8-9; ECF

No. 62-5 at 11-12.  As Plaintiff described his own conduct, he could see the Officer's badge

number, but intentionally asked so that the Officer would know he had taken it down.  ECF No.

56 at 15.  When a second Officer approached, he repeated this conduct.  ECF No. 63-2 at 9.

　　　The Officer Defendants recount a different story.  They claim that they were trying to

break up disturbances and Plaintiff obstructed them by waiving his arms and getting in between

them and the disturbances while yelling obscenities, claiming police brutality and yelling for

badge numbers.  ECF No. 54-3; ECF No. 54-4 at 5-6.  They described him as aggressive and

non-cooperative, inciting the crowd and causing people to stay on the scene instead of

dispersing.  ECF No. 62-6 at 5-6.  The Officer Defendants repeatedly ordered him to stop

interfering and to get to his car.  He refused to comply each time and was in a very agitated state.

ECF No. 54-4 at 5-6.

　　　The next undisputed event is Plaintiff's arrest.  As with what went before, the

circumstances are disputed.

　　　Plaintiff claims that he said to his cousin, "[d]on't worry, I got their badge numbers," in a

voice louder than normal and then started walking away from the Officer Defendants to get back

to Finnegan's Wake to pick up his DJ equipment.  ECF No. 63-2 at 10-12; ECF No. 63-3 at 3;

---

[11] Madena Costa remembered the object broken by the Officer Defendants as eyeglasses.  ECF No. 62-4 at 8.

ECF No. 56 at 10. His version, corroborated by his family and fans, is that after he exchanged words with the Officers, he walked away from them; in that moment, he claims he was not inciting the crowd because most people had already dispersed and the crowd was under control. ECF No. 54-9 at 11-12, 15; ECF No. 54-8 at 11-12; ECF No. 56 at 10; ECF No. 62-4 at 6, 8. Nevertheless, his cousin corroborated the Officers' testimony that they asked him, as promoter, to get involved, to "[g]et your boy;" Madena Costa testified that he told Plaintiff to get back to the club because he observed that Plaintiff was "having some sort of problem with the police." ECF No. 62-4 at 7. Plaintiff claims he only got a few steps away before he heard the police coming at him from behind and telling him he was going to jail. ECF No. 63-2 at 11. Plaintiff claims that he did not resist or try to break free. ECF No. 62-5 at 15. Despite his submission, the Officers slammed him into a vehicle and forced him to the ground before handcuffing and arresting him. ECF No. 54-8 at 15-16; ECF No. 62-5 at 15-18. His cousin testified that it appeared to him that Plaintiff was arrested for trying to disperse the crowd, although he also said he observed the arrest, yet saw nothing that he considered improper conduct by the Officer Defendants. ECF No. 54-9 at 17.

The Officer Defendants paint Plaintiff's arrest with entirely different strokes. They claim that one of them spoke to Madena Costa, the promoter, and told him to get control of Plaintiff or he was going to be arrested. ECF No. 63-7 at 2. Another officer warned Madena Costa to get Plaintiff away from her because he was interfering with police work. ECF No. 63-9 at 4. Plaintiff continued to yell at the Officer Defendants when Madena Costa approached him. ECF No. 63-9 at 4. Plaintiff took a few steps away and the Officers thought he finally was leaving; then he abruptly changed direction and charged back at one of the Officer Defendants. ECF No. 63-9 at 4. As another of the Officers put it:

I observed [his behavior], and directly asserted it to be noncompliance. . . . I'm the professional that deals with this all the time, and I completely saw it necessary to take him out of the picture, eliminate him from that scene, so that the rest of the crowd could disperse.

ECF No. 62-6 at 6-7. When police told Plaintiff he was under arrest, he tried to get away, throwing his arms out and making it impossible for Officers to take him into custody. ECF No. 54-4 at 6. In an attempt to get control, Officers pinned him to a car. ECF No. 54-3. He continued to flail and throw himself about in a violent way, screaming "police brutality" and "ow, stop." ECF No. 63-9 at 5; ECF No. 54-3. Unable to arrest him because of his resistance, the Officers took Plaintiff to the ground where he continued to struggle; ultimately, pepper spray had to be used to subdue him, after which he was handcuffed and arrested. ECF No. 63-9 at 5; ECF No. 54-3.

The surveillance video, which both Plaintiff and the Defendants urge this Court to consider, is ambiguous in that it may be interpreted to support either version of the events. It depicts a street in the dark with people streaming by and milling about, as well as the arrival of multiple police vehicles. It is impossible to determine whether there are fights, although there is plainly a crowd with clusters of chaotic movement, which persists until Plaintiff's arrest. In the video, Plaintiff appears to converge with police officers, walk away, and then turn quickly back. Another individual, identified by the parties as Madena Costa, seems to step between Plaintiff and the officers and appears to push Plaintiff away. Plaintiff then walks back quickly towards the sidewalk where people are congregated; the Officer Defendants appear to follow him. They can be seen pushing him onto the back of a vehicle, after which he seems to move laterally back and forth. He then disappears from view and reappears as he is placed in a police cruiser. The lateral movement that is visible could be Plaintiff flailing his arms and resisting as described by

the Officer Defendants, but might as readily depict the movement of others, consistent with Plaintiff's testimony that he had become limp to avoid any appearance of resisting arrest.

> b.     Rhode Island District Court Bench Trial

After Plaintiff's arrest, he was charged with disorderly conduct in violation of R.I. Gen. Laws § 11-45-1, obstruction of police officers in violation of R.I. Gen. Laws § 11-32-1 and resisting arrest in violation of R.I. Gen. Laws § 12-7-10.  SUF ¶ 14.  Represented by counsel, he was tried criminally at a bench trial presided over by District Court Judge Madeline Quirk and prosecuted by a City assistant solicitor.  All three Officer Defendants testified and were cross examined by Plaintiff's attorney; each was sequestered during trial.  Although his cousin, Madena Costa, was present in the courtroom during the trial and the video was available,[12] Plaintiff called no witnesses, did not offer the video in evidence and did not testify in his own defense.  No documents were received in evidence.  ECF No. 62 at 1-2, 17.

In her decision, Judge Quirk carefully examined the testimony of the Officer Defendants; noting their demeanor and the lack of any evidence that their testimony had been coordinated, she found them credible and therefore found that the evidence presented supported a verdict of guilt beyond a reasonable doubt on all three charges.  See ECF No. 51 at 6-9.  She observed that the Officer Defendants faced a "completely chaotic situation" with events unfolding "very, very quickly."  ECF No. 51 at 6.  She noted that the number of fights outside the club was not material: "I don't think [the police] thought the number was the big deal.  The big deal was the number of people.  The big deal was that it had the potential to turn into a whole group riot."  ECF No. 51 at 9.  While a promoter can be helpful in dispersing crowds, she found that, once a

---

[12] Judge Quirk asked if equipment would be required to play it, but Plaintiff's defense counsel declined.  ECF No. 54-4 at 3.

crowd becomes disorderly, people can get hurt and the promoter has to step back and let the police disperse the crowd quickly.  ECF No. 51 at 8.

Based on the evidence, Judge Quirk concluded that Plaintiff went from being non-involved to putting himself in the way of disturbances and in the way of the Officers trying to control the crowd.  In reaching this conclusion, she accepted Plaintiff's proffered explanation – that "[Plaintiff] was moving among the crowd saying – initially not obnoxious, not loud, not angry, but initially saying to the police, let me handle this or you guys don't know what you're doing."  ECF No. 51 at 8.  Nevertheless, she still found that his conduct threatened to incite the crowd and posed the risk of "harm to the officers and harm to the crowd at large."  ECF No. 51 at 8.  She further found that, when the Officers tried to handcuff and arrest him, "there was a lot of moving around by the [Plaintiff], resisting the cuffing."  ECF No. 51 at 8.  She concluded: "I was extremely impressed by all three of these officers in their professionalism and in their ability for crowd control.  I have to tell you that's a lot coming from me."  ECF No. 9.  Based on her finding of guilt on all three charges, Judge Quirk sentenced Plaintiff to one year of probation on the recommendation of the City solicitor.  ECF No. 51 at 9.

c.    Rhode Island Superior Court Jury Trial

Plaintiff appealed his conviction to Rhode Island Superior Court, triggering his right to a *de novo* jury trial.  See R.I. Gen. Laws §§ 12-3-1; 12-22-1; State v. McManus, 950 A.2d 1180, 1181 (R.I. 2008); State v. Kane, 488 A.2d 707, 708 (R.I. 1985) (per curiam).  This time, an assistant attorney general prosecuted; again all three Officer Defendants testified.  Plaintiff took a different strategic tack from his presentation at the first trial.  In addition to his own testimony, he called two witnesses, his cousin, Madena Costa, and the City parking enforcement officer,

who was one of his fans.  The surveillance video was admitted into evidence.[13]  At the

conclusion of the trial, the jury acquitted Plaintiff of all three charges.

## II.    LAW

### a.    Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is "no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  Taylor v.

Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante,

459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)).  A fact is material only if it

possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence

about the fact is such that a reasonable jury could resolve the point in the favor of the non-

moving party.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010); Santiago-Ramos v.

Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado,

101 F.3d 223, 227 (1st Cir. 1996)).  In ruling on a motion for summary judgment, the court must

examine the record evidence "in the light most favorable to, and drawing all reasonable

inferences in favor of, the nonmoving party."  Feliciano de la Cruz v. El Conquistador Resort &

Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d

670, 672 (1st Cir. 1996)).  It is error to grant summary judgment by drawing inferences in favor

of the moving party; rather, the non-moving party's facts should be properly credited.  Tolan v.

Cotton, 134 S. Ct. 1861, 1866-68 (2014).  The evidence must be in a form that permits the court

to conclude that it will be admissible at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

(1986).

---

[13] The parties did not submit the entire record from the superior court trial.  The trial index indicates there were no
other witnesses but there was additional documentary evidence.  ECF No. 54-7.

b.    <u>Malicious Prosecution</u>

Malicious prosecution is a common law cause of action long recognized in Rhode Island that allows a suit for damages arising from a prior criminal proceeding.[14]  <u>Hillside Assocs. v. Stravato</u>, 642 A.2d 664, 667 (R.I. 1994) ("if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution").  It is well settled in Rhode Island that such actions are disfavored because "they tend to deter the prosecution of crimes and/or to chill free access to the courts."  <u>Clyne v. Doyle</u>, 740 A.2d 781, 782 (R.I. 1999); <u>see</u> <u>Horton v. Portsmouth Police Dep't</u>, 22 A.3d 1115, 1121 (R.I. 2011); <u>Henshaw v. Doherty</u>, 881 A.2d 909, 915 n.5 (R.I. 2005).

To recover damages for malicious prosecution, a plaintiff must prove all of four elements: (1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in the tort plaintiff's favor.  <u>Soares v. Ann & Hope of R.I.</u>, 637 A.2d 339, 345 (R.I. 1994).  In this case, the first and fourth elements are not in issue – that is, Defendants have not challenged whether Plaintiff can establish the element of initiation of the criminal proceedings by the Officer Defendants[15] and it is undisputed that the criminal proceeding ultimately terminated in Plaintiff's favor.  <u>See</u> <u>Vigeant v. United States</u>, 462 F. Supp. 2d 221, 230 n.11 (D.R.I. 2006) (acquittal on merits after second trial, following appeal from conviction

---

[14] Malicious prosecution also may be based on a prior civil proceeding.  Because this claim is based on a prior criminal proceeding, this report and recommendation will not discuss the distinctions that characterize the tort in the civil context.

[15] The record provides no information regarding whether any of the three Officer Defendants participated in the initiation of the charges at either the district or superior court level, beyond the fact that one of the Officers wrote a police report listing the charges.  Although a City solicitor prosecuted in district court and an assistant attorney general prosecuted in superior court, more facts are required to determine whether the element of initiation by the Officer Defendants is nevertheless satisfied.  <u>See</u> <u>Senra v. Cunningham</u>, 9 F.3d 168, 174 (1st Cir. 1993) (law of initiation is unsettled in Rhode Island, suggesting police officers could be liable for initiating a prosecution if they lied to the prosecutor); <u>Morinville v. Old Colony Coop. Newport Nat'l Bank</u>, 522 A.2d 1218, 1221 (R.I. 1997) (defendant can be liable based on active role in instigating or encouraging prosecution).

after first trial, constitutes termination in favor of claimant); Restatement (Second) of Torts § 660(d) (1977). The third element – maliciousness – may be subsumed by the second; that is, malice may be inferred from proof that the prosecution was instituted without probable cause. Nagy v. McBurney, 392 A.2d 365, 367 (R.I. 1978); DeFusco v. Brophy, 311 A.2d 286, 287 n.1 (R.I. 1973). Here, Defendants argue only that Plaintiff's proof fails to demonstrate a triable issue regarding the critical element of lack of probable cause. Whether defendants in a malicious prosecution action had probable cause is susceptible of determination at the summary judgment phase. Horton, 22 A.3d at 1122-23.

Probable cause is the existence of a state of facts sufficient to cause an ordinarily careful and prudent person to believe the accused is guilty. Quinlan v. Breslin, 200 A. 989, 991 (R.I. 1938). To support a criminal charge, there must only be reasonable grounds for a belief that the accused has engaged in criminal activity; probable cause is determined in light of the facts that the person knows or reasonably believes to exist at the moment he initiates prosecution. Horton, 22 A.3d at 1122; see Henshaw, 881 A.2d at 916 (approach to probable cause should be pragmatic and flexible, a "commonsense test") (quoting State v. Spaziano, 685 A.2d 1068, 1069 (R.I. 1996)). A belief in the truth of the charge that is mistaken, though honest, is sufficient to establish probable cause. Goldstein v. Foulkes, 36 A. 9, 9 (R.I. 1896). Probable cause does not turn on actual guilt or innocence; it deals with probabilities, not with resolving conflicting evidence. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) (citing Gerstein v. Pugh, 420 U.S. 103, 121 (1975)); Henshaw, 881 A.2d at 916 n.9 (probable cause does not turn on resolution of conflicting facts; it requires only probability of illegal activity). The probable cause determination relies on a flexible "totality-of-the-circumstances" analysis. Horton, 22 A.3d at 1122. Mindful of public safety concerns, court have emphasized that the circumstances and

context in which police officers are making decisions is important.  State v. Flores, 996 A.2d 156, 161-62 (R.I. 2010); see Plumhoff v. Rickard, 134 S. Ct. 2012, 2021-22 (2014) (reasonableness of police conduct measured in context in light of danger to public safety posed by circumstances).  Officers may rely on their fellow officers in determining the existence of probable cause.  United States v. Meade, 110 F.3d 190, 193 (1st Cir. 1997).

Because malicious prosecution is a disfavored tort, it has long been settled law that the plaintiff must prove the lack of probable cause (and the related existence of malice) by "clear proof," that is, by a higher quantum than a mere preponderance of the evidence.  Hill v. R.I. State Emps.' Ret. Bd., 935 A.2d 608, 613 (R.I. 2007); Clyne v. Doyle, C.A. 95-4499, 1998 WL 798928, at *2 (R.I. Super. Ct. Nov. 6, 1998), aff'd, 740 A.2d 781 (R.I. 1999).  Consistent with this policy, when the initiation of a criminal prosecution is followed by either a grand jury indictment or finding of probable cause by a judicial officer, Rhode Island law presumes the existence of probable cause for purposes of a subsequent claim of malicious prosecution.  See Horton, 22 A.3d at 1121, 1124; Solitro v. Moffatt, 523 A.2d 858, 863 (R.I. 1987).  Similarly, when the initiation of a criminal prosecution is followed by a criminal conviction, courts applying Rhode Island law have labeled the guilty verdict as "conclusive evidence of probable cause in malicious-prosecution cases," even though the conviction is ultimately reversed on appeal.  Vigeant, 462 F. Supp. 2d at 230 n.11; Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996); see Nagy, 392 A.2d at 369 (civil actions that result in judgments reversed on appeal "conclusive" on existence of probable cause).  Specifically, when the tort plaintiff is found guilty in the Rhode Island district court, but the verdict is reversed after de novo jury trial in the Rhode Island superior court, the guilty verdict in district court remains "determinative on the issue of probable cause under Rhode Island law."  Yates v. Gawel, 37 F.3d 1484, at *1 (1st Cir. 1994)

(per curiam) (unpublished). The subsequent acquittal does not remove the presumption arising from the earlier conviction. See Fox v. Smith, 57 A. 932, 932, 934 (R.I. 1904) (acquittal may result from any number of things and has "no bearing whatever on the question of probable cause").

Courts have recognized but one exception to this rule, and it is the fulcrum of the dispute in this case: a malicious prosecution claim may lie notwithstanding a guilty verdict only if the malicious-prosecution plaintiff can prove that the conviction was obtained by perjury[16] or other similar imposition upon the court[17] committed by the person who initiated the prosecution. Yates, 37 F.3d 1484, at *1; see Meehan v. Town of Plymouth, 167 F.3d 85, 90 (1st Cir. 1999) (conviction conclusively establishes probable cause unless it was "obtained by false testimony of defendant charged with malicious prosecution;" applying Massachusetts law).[18] To survive summary judgment, the malicious-prosecution plaintiff must present admissible evidence that specific aspects of the defendant's testimony were both material to the conviction and in fact false; conclusory claims of perjury are insufficient. Meehan, 167 F.3d at 90. Importantly, the burden facing a claimant seeking to establish the absence of probable cause after such a judicial

---

[16] Perjury is testimony that is false, given willfully and corruptly, with full knowledge of its falsity and with the intent of deceiving; untrue testimony that is the result of mistake or defect of memory is not perjury, nor is contradictory testimony that the declarant believed to be true at the time. State v. Sivo, 809 A.2d 481, 488 (R.I. 2002); see R.I. Gen. Laws § 11-33-1. A witness's "responses to questions, if literally true even though perhaps shrewdly misleading are not perjurious" and are best addressed through cross-examination. State v. Ouimette, 415 A.2d 1052, 1054 (R.I. 1980). To prove perjury as opposed to mistake or other error, the claimant must prove that the statements made by the defendant were in fact false and that the defendant did not believe them to be true when made. La Placa v. United States, 354 F.2d 56, 58 (1st Cir. 1965). Perjury may be established by circumstantial evidence. R.I. Gen. Laws § 11-33-5.

[17] For example, fraud, conspiracy or subordination in the procurement of the conviction may rebut the presumption of probable cause arising from the conviction. Meehan, 167 F.3d at 90.

[18] Although Meehan applies Massachusetts law, its analytical approach has been employed by the Rhode Island Supreme Court. Henshaw v. Doherty, 881 A.2d 909, 917 n.10 (R.I. 2005) (quoting United States v. Parcels of Land, 903 F.2d 36, 47 (1st Cir. 1990) ("Even if we corrected all of the claimed material omissions, and disregarded the alleged falsehoods and the challenged statements of confidential informants, there still would exist more than enough evidence to establish probable cause.")). Both parties rely on Meehan as applicable to the tort of malicious prosecution as interpreted under Rhode Island law. See Vigeant v. United States, 462 F. Supp. 2d 221, 229 n.11 (D.R.I. 2006) (citing Meehan as instructive on Rhode Island law because "Massachusetts maintains a similar rule").

finding remains that of "clear proof," Hill, 935 A.2d at 614, a burden that the Rhode Island Supreme Court has labeled as "heavy." Horton, 22 A.3d at 1124.

To grapple with whether the malicious-prosecution plaintiff has proffered sufficient evidence of perjury to permit the claim to proceed to a fact finder, the court may employ a bifurcated analysis. Meehan, 167 F.3d at 90. Focusing on the elements of each charge, first, the court should examine whether the plaintiff has proffered admissible evidence sufficient to create "a genuine issue of fact as to whether his conviction was obtained solely by the false testimony of the defendants."[19] Id. To sustain this burden, the tort plaintiff must demonstrate that there is a factual dispute whether the charging defendant's testimony that he attacks in fact was both material to the conviction and constitutes perjury, that is, it is intentionally false, and not the product of error, mistake or confusion. See id. at 91; Hill v. Winn-Dixie Charlotte, Inc., 397 S.E.2d 347, 349-50 (N.C. Ct. App. 1990) (conflicts in testimony of witnesses does not constitute proof of perjury). Second, the court may hypothesize that the challenged testimony was false and examine whether there nevertheless is "substantial undisputed evidence that implicate[s] [the plaintiff] in the crime of which he was convicted." Meehan, 167 F.3d at 91. If, as to each element of the charge, either the evidence of perjury is legally insufficient or there is sufficient undisputed evidence to establish probable cause, the malicious prosecution claim fails. Id. at 90-91.

---

[19] Both parties overread Meehan, seizing on the court's statement that a conviction conclusively establishes probable cause unless it was "obtained *solely* by false testimony" of the charged defendant. Meehan, 167 F.3d at 90 (emphasis supplied). Defendants argue that this means that the malicious prosecution claim fails because Plaintiff must prove that there is no other inculpatory evidence, which he cannot do; Plaintiff argues that it means that his district court conviction is rebutted because it was based "solely" on the Officer Defendants' testimony, since no other evidence was presented. Both interpretations are wrong. Meehan simply holds that the movant challenging a claim of malicious prosecution despite a conviction may either show the lack of competent evidence of perjury or the presence of undisputed evidence untainted by the claim of perjury as to each element of the charge. Because the Meehan plaintiff failed to present colorable evidence of perjury and because there was substantial undisputed evidence of each element of the charged crime, summary judgment was properly granted in favor of the town and arresting officers. Id. at 90-91.

## III.    ANALYSIS

The probable cause analysis requires sustained focus on the elements of the three charges of which Plaintiff stood convicted: disorderly conduct,[20] obstruction of police[21] and resisting arrest.[22]  Plaintiff claims that the Officer Defendants maliciously conspired to concoct lies to establish each of the elements of these charges; he contends that they were driven by animosity arising from his exercise of his First Amendment rights in criticizing them and by the need to cover up the excessive force they had employed during his arrest.  Plaintiff asserts that their materially false testimony was the sole cause of his conviction in the Rhode Island district court because no other evidence was presented, and that the same lies led to his prosecution in the superior court.

As proof of the Officers' perjury on every essential element of the three charges, he points to the different outcome in the superior court where the jury had the benefit of witnesses and evidence other than the supposed false testimony of the three Officer Defendants. Specifically, Plaintiff contends that the Officer Defendants exaggerated the seriousness of the situation, describing multiple fights when there was really only one, and that they lied both when

---

[20] As relevant here, a person commits disorderly conduct if he "intentionally, knowingly, or recklessly: (1) [e]ngages in fighting or threatening, or in violent or tumultuous behavior; (2) [i]n a public place . . . disturbs another person by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities; (3) [d]irects at another person in a public place offensive words which are likely to provoke a violent reaction on the part of the average person so addressed; (4) [a]lone or with others, obstructs a . . . street, [or] sidewalk . . . ."  R.I. Gen. Laws § 11-45-1; see State v. Hesford, 900 A.2d 1194, 1200-01 (R.I. 2006) (each subsection of disorderly conduct statute should be interpreted by its plain meaning).

[21] The crime of obstruction of police occurs when a person "obstruct[s]" an officer "while in the execution of his or her office or duty."  R.I. Gen. Laws § 11-32-1.  Loud speech addressed to police officers while they are enforcing the law can be obstruction if the verbal harangue is so disconcerting that it distracts the officers from their duty. DeFusco v. Brophy, 311 A.2d 286, 288 (R.I. 1973) (purpose of R.I. Gen. Laws § 11-32-1 to allow public safety officer to execute duty without hindrance in an expeditious manner).

[22] The crime of resisting arrest occurs when any person uses "force or any weapon in resisting a legal or an illegal arrest by a peace officer, if the person has reasonable ground to believe that he or she is being arrested and that the arrest is being made by a peace officer."  R.I. Gen. Laws § 12-7-10; State v. Mendoza, 889 A.2d 153, 162 (R.I. 2005) (resisting arrest statute requires individuals to submit to arrest peacefully and if unlawfully arrested pursue remedies in court).

they claimed that Plaintiff was inciting onlookers and in their way as they were dispersing the crowd, as well as when they claimed that Plaintiff resisted arrest.  To satisfy his summary judgment burden of proffering evidence sufficient for a fact finder to find clear proof of perjury, Plaintiff points to the countervailing factual evidence that was presented to the jury that found Plaintiff not guilty of all three charges, as well as to the other evidence from his witnesses that he presented in connection with this motion.

There is no question that Plaintiff has marshaled evidence sufficient to create a factual dispute with respect to every element of every charge, as well as regarding the seriousness of the critical background circumstances in which the relevant events unfolded.  The record presented by the parties in connection with this motion is replete with competing "he said/she said" versions of virtually every detail of the events of March 22, 2010.  However, such disputed evidence is very different from evidence adequate to qualify as clear proof of perjury – inconsistent testimony by two witnesses regarding the same event does not, without more, prove perjury by one of them.  See Crutcher v. Coleman, No. 01-2048-KHV, 2003 WL 21077433, at *6 (D. Kan. May 9, 2003) (inconsistent testimony and inference of improper influence on child victim not evidence of perjury; summary judgment disposes of malicious prosecution claim); Winn-Dixie Charlotte, Inc., 397 S.E.2d at 349-50 (false statements made unintentionally or in honest belief of truth are not perjury; because conflicts in testimony do not establish perjury, directed verdict on malicious prosecution claim affirmed).  Further, such factual disputes do not eliminate either the significant undisputed evidence found in Plaintiff's own testimony or the

independent[23] testimony from Plaintiff's witnesses, which collectively is sufficient to establish probable cause with respect to many of the elements of the charges.

Before taking the analysis deeper, I pause to note what is not at issue. This is a not a case where Judge Quirk was prevented from considering the evidence to which Plaintiff now points as proof of perjury by the Officer Defendants. Unlike an indictment where the grand jury's lack of exculpatory evidence is the product of the prosecutor's strategic decision to hold it back, in this case, Plaintiff's evidence was not presented to Judge Quirk as a result of Plaintiff's strategic decision not to offer any of it. Indeed, his cousin, Madena Costa, was present in the court during the trial and could easily have testified; Judge Quirk asked if the parties wanted equipment to play the video, but Plaintiff declined.[24] The Officer Defendants were sequestered and then subjected to extensive cross-examination by Plaintiff's attorney. Finally, while no witnesses testified to Plaintiff's side of the story, Judge Quirk accepted and relied upon a proffer by Plaintiff that he was not drunk but rather was trying to disperse the crowd. ECF No. 51 at 8. In short, there was no hint of fraud or other manipulation in the district court to procure a guilty verdict. Rather, the only possible path available to Plaintiff to overcome the presumption arising from his conviction in the Rhode Island district court is by admissible proof sufficient to create a fact issue with respect to perjury by the Officer Defendants. Evidence that establishes only a fact dispute with respect to guilt on any of the three charges is insufficient.

---

[23] In this report and recommendation, I refer to the versions of the facts that come from the testimony of Plaintiff's witnesses, with which Plaintiff's testimony does not always agree, as independent of, or untainted by, the testimony of the Officer Defendants that Plaintiff claims is perjury.

[24] Under certain circumstances, the availability of significant relevant evidence (apart from a criminal defendant's testimony) that a party opts not to offer permits the fact finder to draw an adverse inference. Burrell v. Virginia, 395 F.3d 508, 514-16 (4th Cir. 2005). Because this motion for summary judgment requires this Court to consider only inferences in favor of Plaintiff, I do not rely on his failure to call Madena Costa or to offer the video for that purpose. Rather, Plaintiff's decision not to present this evidence may be considered only to establish that the evidence that Plaintiff now claims proves perjury by the Officer Defendants was not withheld from Judge Quirk as a result of their wrongful conduct.

Also not at issue is Plaintiff's claim that he was speaking and the content of his speech motivated the Officer Defendants to commit perjury. While potentially pertinent to a claim under 42 U.S.C.§ 1983 and certainly relevant to the determination whether the Officer Defendants acted with malice,[25] whether Plaintiff was exercising his rights under the First Amendment at the time of the arrest analytically does not affect the existence *vel non* of probable cause to prosecute for conduct that consists of speech. See Smith v. McCluskey, 126 F. App'x 89, 94 (4th Cir. 2005) (per curiam) (charge of disorderly conduct based on circumstances independent of expression protected by First Amendment; verbal criticism of police in potentially volatile situation may be prosecuted criminally). It is well settled that speech alone may constitute obstruction of the police, DeFusco, 311 A.2d at 288 (verbal harangue can obstruct police), or disorderly conduct if it is likely to provoke a violent reaction. State v. Tavarozzi, 446 A.2d 1048, 1052 (R.I. 1982); see State v. McKenna, 415 A.2d 729, 732 (R.I. 1980) (speech that leads to immediate disturbance can constitute disorderly conduct). Further, a law enforcement action restricting speech to protect public safety does not violate the First Amendment if the restraint is justified by a legitimate governmental purpose. See Gericke v. Begin, 753 F.3d 1, 7-9 (1st Cir. 2014) (claim of retaliatory prosecution for exercise of First Amendment rights survives summary judgment because police never ordered claimant to leave or stop filming); Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 607 (7th Cir. 2012) (behavior that obstructs effective law enforcement or interferes with protection of public safety is not immunized because it involves speech). Finally, in determining whether a police order to leave is reasonable under the circumstances, courts must employ deference to give the police "breathing room to make reasonable but mistaken judgments." Gericke, 753 F.3d at 5, 8; see Thayer v. Chiczewski, 705

---

[25] Proof of malice is legally insufficient to establish lack of probable cause. DeFusco, 311 A.2d at 287 n.1 ("While malice may be inferred upon a showing of a lack of probable cause, a want of probable cause cannot be inferred from a showing of malice.").

F.3d 237, 249-51 (7th Cir. 2012) (arrest of protester who refused to disperse based on arguable probable cause sufficient to immunize police action).

The relevant inquiry – whether there is competent evidence of perjury tainting material testimony of the Officer Defendants and whether the undisputed facts nevertheless establish probable cause – begins with the circumstances in which the Officer Defendants found themselves on the night of March 22, 2010.  Critical is their testimony resulting in Judge Quirk's finding of "a completely chaotic situation" with the potential to develop into a riot if the crowd was not quickly dispersed.  ECF No. 51 at 6, 9.  This testimony is the marrow of the charges because these are the circumstances that render Plaintiff's conduct disorderly and that render reasonable the Officer Defendants' repeated orders to disperse thereby criminalizing his admittedly repeated and aggressive refusals to stop obstructing their work.

Plaintiff asks this Court to juxtapose the Officers' testimony with his own and that of his cousin and his aunt – all of the latter three testified that by the time the Officers were focused on Plaintiff, the crowd had dispersed and peace was restored.  Plaintiff overlooks the testimony from some of his other witnesses, for example, the parking enforcement officer and his acquaintance, both of whom testified that the crowd was drawn by the fighting and was not dispersing; the parking enforcement officer testified that she remained in her vehicle throughout the entire incident, including during Plaintiff's arrest, because she believed that it was unsafe. ECF No. 63-1 at 6, 7; ECF No. 63-11 at 3.  Importantly, Plaintiff also ignores his own testimony that things were "getting a little out of hand" after the arrest of the woman who broke the window and that it was only two to five minutes later that the Officers turned their attention to his conduct and ordered him to leave.  Finally, Plaintiff ignores the video, which depicts clusters of people continuing to mill about during his arrest.  In short, there is ample independent

evidence, and even undisputed evidence from Plaintiff himself, corroborating the Officer Defendants' testimony regarding the danger posed by the situation, justifying their orders to Plaintiff (and others) to disperse. There is simply no evidence establishing that either their perception of the potential for danger posed by the crowd or their repeated directives to Plaintiff to leave were pretextual. In short, while Plaintiff has certainly established a factual dispute whether it was peaceful or chaotic at the time of his arrest, he has failed to present evidence of perjury with respect to this critical predicate to the charges against him. See State v. Anderson, 752 A.2d 946, 949 (R.I. 2000) (inconsistencies in testimony does not constitute perjury *per se*).

The charges of disorderly conduct and obstruction of the police target Plaintiff's speech and conduct as he criticized the Officer Defendants in their performance of their duties, refused to leave, demanded special treatment for himself as the DJ and the owner of a downtown business and asked gratuitously and in a voice that was "[l]ouder than normal" for badge numbers so that the Officer Defendants and the people in the crowd would be aware that he planned to report police misconduct.[26] While Plaintiff claims he was helping his cousin to disperse the crowd, the undisputed and independent evidence establishes that the cousin was experienced in dealing effectively and cooperatively with the police in these circumstances, while Plaintiff was not; it also establishes that Plaintiff refused multiple orders to leave to the point where his cousin was summoned to assist the Officers in getting him under control.[27]

Plaintiff's testimony about his behavior clearly raises a fact dispute regarding whether he may be found guilty beyond a reasonable doubt of either disorderly conduct or obstruction of the

---

[26] This description of Plaintiff's conduct is based on his testimony during the superior court trial and his deposition in this case. See ECF No. 56 at 15-16; ECF No. 63-2 at 6-9. The volume of his speech comes from the testimony of his cousin, Madena Costa. ECF No. 63-3 at 3 ("Louder than normal").

[27] Plaintiff of course does not agree that he needed to be brought under control; nevertheless, one of his witnesses, Madena Costa, corroborated the testimony of the Defendant Officers that they asked him to assist them in getting Plaintiff away from the scene. ECF No. 62-4 at 7.

police.  That, however, is beside the point – the issue now is whether the untainted testimony regarding Plaintiff's words and conduct establishes that the Officer Defendants' committed perjury when they said that he was disturbing others, that his words and conduct were likely to provoke others to a violent reaction and that his words and conduct were hindering them in the exercise of their duty.  Mindful that perjury must be more than differing perceptions, mistakes or differences of recollection, Plaintiff's proof falls woefully short of the mark.  Moreover, assuming the predicate of a potentially dangerous situation, which is well established by evidence independent of the Officer Defendants, Plaintiff's own description of the disruptive nature of his conduct is enough to establish probable cause to charge him with disorderly conduct and obstruction of the police.

The charge of resisting arrest relies on the Officer Defendants' testimony that Plaintiff tried to run and then flailed his arms and body as they tried to apply handcuffs.  Plaintiff's completely inconsistent testimony is that he was limp and unresisting.  The independent evidence is ambiguous because the arrest happened quickly and the movement to the car and then to the ground obstructed the views of the witnesses.  The video is susceptible of both interpretations as it shows significant movement but lacks the clarity necessary to confirm either version.  There is no question that whether Plaintiff was guilty of resisting arrest is disputed; if that were the issue before this Court now, Plaintiff would prevail.  However, this motion requires Plaintiff to present evidence creating a genuine dispute over whether the Officer Defendants are guilty of perjury – viewed through this lens, the proffered factual dispute is insufficient as a matter of law.  See Solitro, 523 A.2d at 862 (existence of exonerating facts immaterial to whether probable cause existed to initiate prosecution).  Even when all the inferences are tipped in favor of Plaintiff, there is independent evidence corroborating the Officer Defendants' description of Plaintiff's

resistance and there is no proof that they affirmatively lied about their perception that Plaintiff resisted. Recognizing that Plaintiff's burden is "clear proof," which is a "heavy" one, Horton, 22 A.3d at 1124, I find that Plaintiff has failed to present admissible evidence sufficient to permit a fact finder to conclude by clear proof that perjury procured his district court conviction of resisting arrest.

At bottom, the long-standing policy considerations that make malicious prosecution a disfavored tort under Rhode Island law drive the outcome of this case. See Henshaw, 881 A.2d at 914 ("in close cases concerning the validity of an arrest, the benefit of the doubt should go to the authorities who have obtained a warrant from a neutral judicial officer before making the arrest"); Brough v. Foley, 572 A.2d 63, 66 (R.I. 1990) (malicious prosecution disfavored because it deters prosecution of crime; consequently, such claims subjected to stricter burden of proof); Nagy, 392 A.2d at 368 (judicial determination of guilt is conclusive of probable cause to initiate claim because competent tribunal not likely to render decision for party who lacked probable cause); Lee v. Jones, 116 A. 201, 204 (R.I. 1922) (because "[p]ublic policy requires the exposure of crime," actions for malicious prosecution not favored in law). If acquittal following appeal of a district court conviction and conflicting evidence on the elements of the crime charged are sufficient to support an inference of perjury at summary judgment, every criminal defendant who is convicted in district court and acquitted in superior court would have a viable claim of malicious prosecution. Rhode Island's strongly articulated public policy requires that a plaintiff must bring forth more meaty evidence than mere differences in the perception of an event. See Yates, 37 F.3d 1484, at *1. Taking all reasonable inferences in Plaintiff's favor, I find that he has failed to meet his burden and recommend that summary judgment enter for the Defendants on Count VIII, Plaintiff's malicious prosecution claim. See Hill, 935 A.2d at 613-14.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion for Partial Summary Judgment (ECF No. 50) be granted and that judgment in favor of Defendants enter on Count VIII of the Amended Complaint.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 29, 2014